LAURA DENVIR STITH, Judge.
I agree that sufficient evidence supported Mr. Pierce’s resisting arrest conviction.
*435 Although I concur with the principal opinion that retrial of Mr. Pierce did not violate article I, section 19, I do so on different grounds. As set out in Section I below, Mr. Pierce did not waive his right to claim such a 'violation by not alerting the court of the deadline prior to its passage. It was not his responsibility to keep track of such deadlines for the court, and no objection was required as the passage of the deadline did not violate any of his rights; they could be violated only by the State’s attempt to retry him. He did timely raise the article I, section 19 claim as soon as retrial occurred. By that point, however, he repeatedly had consented to delays in his retrial. Just as is the case with traditional double jeopardy rights, a violation does not occur when the defendant consents to the delay.
I disagree entirely with the principal opinion’s holding that a trial court always must submit a lesser included offense instruction if requested to do so by a party. The principal opinion intentionally leaves vague the source of that requirement. In places, it implies that this obligation is inherent in the right to jury trial, yet it never says that a court’s refusal to instruct down violates a defendant’s right to jury trial. It could not do so, for, as discussed in Section II below, the United States Supreme Court has made it clear that the right to jury trial does not bar the courts from limiting lesser included offense instructions to those that a reasonable juror could find supported by the evidence. Rather, the United States Supreme Court has said that submitting unsupported lesser included offenses invites arbitrary decision making and, therefore, itself invites due process scrutiny.
In other places, the principal opinion suggests that lesser included offense instructions are required by statute. Yet the governing Missouri statute, section 556.046.2, RSMo 2000,[1] provides exactly the contrary, stating that a trial court is obligated to instruct down “only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense” (emphasis added). See also § 556.046.3, RSMo Supp. 2018. The principal opinion is in conflict with these statutory standards.
In yet other places, the principal opinion suggests its result necessarily follows from this Court’s prior recognition that a defendant need not put on affirmative evidence to support a request for a lesser included offense instruction. In so stating, the principal opinion blatantly ignores the portions of the key case on which it and the companion case, State v. Jackson, rely— State v. Williams, which, while repeating the admonition that affirmative evidence is not required, also holds that an instruction down is required only when “a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established.” 313 S.W.3d 656, 660 (Mo. banc 2010).
In so holding, Williams reaffirmed the standard followed by numerous prior Missouri cases. That is also the standard followed by the United States Supreme Court and by 47 of our 49 fellow states. It is the standard this Court should continue to follow.
Indeed, not even the defense asked this Court to reject its long-standing rule and hold that lesser included offense instructions must be submitted even if a reasonable juror could not find them to be supported. The principal opinion created an *436 issue where there was none. It then nullified a statute and overruled this Court’s precedent without the benefit of argument or briefing. Principles of due process and separation of powers counsel against such activism.
Finally, assuming just for the moment that the principal opinion is correct that a defendant is entitled to a lesser included offense instruction even if a rational juror could not convict him of the lesser offense and acquit him of the greater, Mr. Pierce is not entitled to one here, for he conceded that the State had proved the only element differentiating the greater and lesser offenses by admitting in closing argument, in his motion for new trial and in the instruction conference that the substance seized weighed more than two grams. Yet the jury could acquit of the greater offense only if it found he did not possess more than two grams. The principal opinion thereby holds that defense counsel cannot concede an issue. The folly that this will cause in future cases and the arguments that heretofore would have been held waived but that henceforth must be considered on the merits cannot be overstated.
Because the principal opinion changes the law in contravention of Missouri statute and this Court’s precedent and ignores the facts conceded by the defense, I dissent from the principal opinion’s holding that the trial court erred in refusing to instruct the jury on the lesser included offense of possession.

1. MR. PIERCE WAIVED HIS OBJECTIONS TO RETRIAL UNDER ARTICLE I, SECTION 19

Article I, section 19 requires that, when a mistrial is declared because the jury cannot reach a verdict, the case must be set for retrial in the same or the following term. That requirement was not followed here. Mr. Pierce, therefore, moved the trial court to dismiss his case because of failure to comply with article I, section 19 at the start of his second trial in November 2011. The principal opinion concludes that this was too late and that Mr. Pierce waived his claim under the retrial deadline in article I, section 19, because he failed to raise it at his earliest opportunity, stating, “Pierce had multiple opportunities to raise that deadline when the trial court was considering whether to continue his retrial prior to (and, ultimately, beyond) that date. He chose not to do so.” (Op. at 429).
This is incorrect. The key case that the principal opinion cites for this rule, State v. Fassero, concerns errors that the defendant attempted to raise for the first time on appeal. 256 S.W.3d 109, 117 (Mo. banc 2008) (not analyzing when an article I, section 19 retrial deadline argument must be raised but merely applying the rule that “issues that are not raised in the trial court are waived”).[2] Of course, Mr. Pierce did not raise this issue for the first time on appeal; he raised it in the trial court at the start of his second trial. So why does the principal opinion say he raised it too late to preserve it? Because it says he has an obligation to object when there is still time for the prosecution or court to correct the situation. But why? In what other circumstance do the courts require a defendant to tell the prosecution that it is about to let an important deadline pass that may be beneficial to the defendant? Does the *437 defendant also waive the statute of limitations by not warning the court or prosecutor that it is about to expire? Must a defendant now inform the prosecutor that, if she empanels the jury, double jeopardy will attach or risk waiving her right to claim that double jeopardy attached? Must a defendant warn the prosecutor who asks for a mistrial that, if granted, will allow the defendant to claim double jeopardy?
Indeed, does the principal opinion’s reasoning mean that defendant’s failure to raise a double jeopardy claim also constitutes a “waiver” of defendant’s right to later claim double jeopardy when a retrial is ordered? Of course it does not. To so hold would turn double jeopardy law on its head. The law is well settled that a defendant is under no obligation to inform the court that if it dismisses suit, that defendant cannot be retried without violating double jeopardy principles. To the contrary, our cases explicitly hold that a defendant need not raise a double jeopardy objection until the state attempts to retry him or her, for only at that point is double jeopardy violated. In fact, as State v. Tiger, 972 S.W.2d 385, 391 n. 1 (Mo.App.1998), explained, “We could not logically require [Defendant] to preserve [his double jeopardy claim] at his first trial, since no double jeopardy would yet have occurred. It only arose once the State decided to proceed against [Defendant] a second time.” Accord State ex rel. Reynolds v. Kendrick, 868 S.W.2d 134, 136 (Mo.App.1993). In effect, the principal opinion’s reasoning requires the defendant to become an advocate for the state, saving it from its own failure to recognize a double jeopardy situation. This the law does not require in the case of traditional double jeopardy, and neither should it so require here.
While not involving the classic form of double jeopardy, the retrial deadline is likewise contained within article I, section 19 of the Missouri Constitution, which actually is titled “Self-incrimination and double jeopardy.” Like classic double jeopardy, the retrial deadline precludes retrial of a defendant if its requirements are not met. It is logical, therefore, that the principles governing application of a classic double jeopardy claim under article I, section 19 also govern application of article I, section 19’s retrial deadline.
A defendant need not alert the state if it is about to take an action that would result in a violation of double jeopardy if the defendant later were to be retried. So too, Mr. Pierce was not required to alert the court that, if it did not try him within the same or the next term after his first mistrial, it would violate his article I, section 19 rights. Of course, once that retrial commenced, he was obligated to raise his article I, section 19 retrial deadline objection, and he did just that. That was the proper time to do so, for before that time, none of his rights under article I, section 19 had been violated. Only the actual retrial could constitute such a violation.
This does not mean, however, that Mr. Pierce’s article I, section 19 rights were violated. It means only that he did not waive them by failing to alert the court to the existence of the deadline for retrial set out in article I, section 19 before it had passed.
Double jeopardy principles do not always protect a defendant from retrial. It is axiomatic that a defendant who appeals a case and asks for a remand for new trial, for example, cannot claim the retrial violates his right to be free from double jeopardy. Similarly, a defendant who requests or causes a mistrial cannot complain that the resulting retrial violates double jeopardy. State v. Tolliver, 839 *438 S.W.2d 296, 299 (Mo. banc 1992). The rationale of Tolliver and similar cases - is that no violation of double jeopardy protections occurs when it is the defendant who caused or consented to retrial. Id. Consent to mistrial is not a waiver of double jeopardy rights so much as it is the failure of double jeopardy protections to apply in the first instance, much like voluntary consent to a search would preclude a claim of a Fourth Amendment violation and voluntary agreement with a request not to print a fact would preclude later claiming a First Amendment violation.
And, just as one can consent to a retrial, and just as one can consent to a search that otherwise might violate the Fourth Amendment or to a restriction on speech that otherwise might violate the First Amendment, so too one can consent to a continuance of a trial to a date that otherwise might violate article I, section 19. Such consent is valid and precludes the defendant from later claiming that his retrial violates that constitutional provision. Id.
In the context of double jeopardy violations, consent to a mistrial may be express or implied. Id. In analyzing whether a defendant has consented and so vitiated any double jeopardy bar, this Court employs a case-specific factual analysis rather than a “mechanical formula.” Id. “[C]on-sent may always be implied from the totality of the circumstances attendant on the declaration of a mistrial.” Id.
Mr. Pierce’s first trial began on November 9, 2010, which fell within the November 2010 term. The next term began on February 14, 2011 and ended on May 6, 2011. His retrial originally was set within the same term as his first trial, on January 10, 2011. The first two continuances would have allowed the trial to occur within the next term, but the third through seventh continuances placed the retrial past May 6, 2011, the last day of the next term following his first trial.
Mr. Pierce objected to none of these continuances, despite being represented by counsel in each instance, and he requested two of them. He has not supplemented the record with any evidence that he ever moved to set a trial date, nor has he claimed that he had no opportunity to object. The totality of the circumstances shows that Mr. Pierce impliedly consented to the delay in the start of his second trial and thereby vitiated any claim that article I, section 19 barred his retrial after the end of the next term of court.
Accordingly, I concur that article I, section 19 does not bar Mr. Pierce’s retrial, but I would hold that this is because he consented to the delays, not because he waived his right by not alerting the court or prosecutor to the article I, section 19 issue before the deadline for retrial passed.

II. THE TRIAL COURT DID NOT ERR IN REFUSING TO SUBMIT AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF POSSESSION

A. The Trial Court’s Authority to Instruct the Jury

The principal opinion’s holding that a court always must instruct down if requested subverts the trial court’s exclusive authority to declare the law and requires this Court to overrule more than 15 years of its own precedent and to nullify the effect of two validly enacted statutes.
The principal opinion says this result is required by the rule that the jury has a right to believe or disbelieve all or any part of the evidence. Certainly, our cases so provide. See, e.g., Williams, 313 S.W.3d at 660.
*439 But the principal opinion then goes on to reach a conclusion never before reached in any other Missouri case — that the “unavoidable corollary” of this rule is that any requested lesser included offense instruction must be submitted to the jury, even if no reasonable juror could find the fact on which it is premised, because “[a]ll decisions as to what evidence the jury must believe and what inferences the jury must draw are left to the jury.” In effect, the principal opinion concludes that the jury’s ability to believe and disbelieve evidence somehow restricts the trial court’s discretion to instruct the jury.
This logic confuses questions of law with questions of fact. It undercuts the fundamental structure of our court system, in which the court’s function is to declare the law and the jury’s function is to apply the law. United States v. Gaudin, 515 U.S. 506, 513, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); Sparf v. United States, 156 U.S. 51, 102, 15 S.Ct. 273, 39 L.Ed. 343 (1895). The jury’s right to find facts cannot shape the trial court’s declaration of law.
As the United States Supreme Court notes in Sparf “It is true, the jury may disregard the instructions of the court, and in some cases there may be no remedy. But it is still the right of the court to instruct the jury on the law, and the duty of the jury to obey the instructions.” 156 U.S. at 72, 15 S.Ct. 273 (emphasis added). In other words, the jury’s function and the court’s function are different; that the jury has the power to disregard the law does not deprive the court of its fundamental authority to declare and instruct on the law.
But by mandating that courts instruct the jury on a lesser included offense whenever a party so requests, the principal opinion effectively strips courts of their authority to declare the law in these circumstances. This is wrong, for “the judge always has the right and duty to tell [the jury] what the law is upon this or that state of facts.” Horning v. District of Columbia, 254 U.S. 135, 138, 41 S.Ct. 53, 65 L.Ed. 185 (1920), abrogated on other grounds as recognized by Gaudin, 515 U.S. at 520, 115 S.Ct. 2310.
Exercising this authority, the Supreme Court holds that an “independent prerequisite for a lesser included offense instruction [is] that the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater.” Schmuck v. United States, 489 U.S. 705, 720 n. 8, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); see also Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) (“[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater”).
As Sparf states, “If the jury were to be made judges of the law as well as of fact, parties would be always liable to suffer from an arbitrary decision.” 156 U.S. at 96, 15 S.Ct. 273. Consequently, “The lesser-included offense charge is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all.” United States v. Tsanas, 572 F.2d 340, 343 (2d Cir.1978).[3]
*440 For this reason, the Supreme Court expressly has disapproved of state laws that require a trial court to instruct down when there “is not a scintilla of evidence to support the lesser verdicts.” Roberts v. Louisiana, 428 U.S. 325, 334, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) (plurality opinion). The Supreme Court also admonishes that “[a] lesser included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for a conviction of the lesser-ineluded offense.” Sansone v. United States, 380 U.S. 343, 349-50, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965).
Not surprisingly, in light of this wealth of Supreme Court cases, every state except Iowa and Florida requires a basis in the evidence for a court to be obligated to instruct down. See, e.g. Ex parte Smith, 756 So.2d 957, 968 (Ala.2000) (“A defendant is entitled to a charge on a lesser-ineluded offense only if there is any reasonable theory from the evidence to support the charge”).[4]
Nonetheless, in the face of nearly unanimous precedent among the federal and state courts, the principal opinion implicitly holds that a trial court’s authority to refuse to instruct down violates the defendant’s right to have his guilt determined by a jury.[5] In support, it cites only to *441 Missouri statutes and to prior Missouri cases. As shown below, neither supports its reasoning.

B. Missouri Statutes Require Trial Courts to Instruct Down Only W hen There Is a Basis in the Evidence to Do So

Section 556.046.2 provides in relevant part:
The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.
§ 556.046.2 (emphasis added). The legislature amended section 556.046 in 2001 to include subsection (3), which states:
The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense.
§ 556.046.3, RSMo Supp.2013 (emphasis added).
The principal opinion guts the express language of sections 556.046.2 and 556.046.3 confining a trial court’s obligation to instruct down to situations in which there is “a basis” for doing so when it holds that “there is always a basis in the evidence ... because the jury is free to disbelieve all or any part of the evidence.” This reasoning renders the requirement that there be a basis in the evidence mere surplusage, thereby nullifying it and overruling an entire line of case law giving meaning to this statutory requirement. Moreover, in writing this express requirement out of existence, the principal opinion transgresses well-established rules of statutory construction and separation of powers, which require that courts avoid interpreting statutes in a way that renders their language meaningless or unreasonable. See Am. Fed’n of Teachers v. Ledbetter, 387 S.W.3d 360, 363 (Mo. banc 2012). This is just what the principal opinion has done in interpreting the statutory requirement as always being satisfied when the statute expressly states that it is only satisfied under certain conditions.
This Court repeatedly has identified the proper approach to construing a statute. “In determining legislative intent, this Court [should consider] the language of the statute and words employed in their plain and ordinary meaning.” Finnegan v. Old Republic Title Co. of St. Louis, Inc., 246 S.W.3d 928, 930 (Mo. banc 2008); accord Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. banc 2011), quoting Parktown Imports, Inc. v. Audi of America, Inc., 278 S.W.3d 670, 672 (Mo. banc 2009). “Where the language is clear and unambiguous, there is no room for construction.” Hyde Park Hous. Partnership v. Dir. of Revenue, 850 S.W.2d 82, 84 (Mo. banc 1993). “It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect.” Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 673 (Mo. banc 2010) (Breckenridge, J., concurring).
Applying these principles here, there is no room for statutory construction. The plain meaning of sections 556.046.2 and 556.046.3 is indisputable: a trial court is required to instruct down only when there is a basis in the evidence for so doing.
*442 The practical consequences of the principal opinion’s new rule highlight its incompatibility with the plain meaning of section 556.046. Take, for example, a situation in which the defendant is charged with armed robbery, and the evidence, including a surveillance video, indisputably shows that the robber carried a large firearm when he committed the robbery. The defendant denies that he was the person who committed the robbery but does not contest that the robber used a firearm. He requests a lesser included instruction on unarmed robbery.
As this Court’s traditional interpretation of section 556.046.2 entitles a party to a lesser included offense instruction only if there is a basis for a verdict (1) acquitting the defendant of the charged offense and (2) convicting him of the lesser offense, the trial court would not be required to instruct down because there is no basis to convict the defendant of unarmed robbery. That is because there is no dispute that an armed robbery occurred, the only dispute is whether the defendant was the robber. Consequently, there may be a basis to acquit the defendant of the greater offense, but, if so, there can be no basis to convict him of the lesser offense: he either is guilty of armed robbery or innocent of any crime. Indeed, this Court and the court of appeals have reached this same conclusion under parallel circumstances. See, e.g., State v. Amerson, 518 S.W.2d 29, 33 (Mo.1975) (holding the trial court properly refused to instruct on second-degree murder when the crime was either “a coldblooded and wholly unprovoked murder” or “the accused was guilty of no crime at all” because another committed the act).[6] This is the result that a plain meaning interpretation of sections 556.046.2 and 556.046.3 requires.
Yet under the principal opinion’s holding, a trial court nonetheless would be required to instruct the jury on unarmed robbery. The principal opinion explains that this is because evidence necessary to support the differential element of a greater charge is “wholly irrelevant” to a jury’s ability to convict the defendant of the lesser charge and, because the State has the burden of proof, the jury always can acquit him of the greater charge, even when there is “undisputable” evidence that the person who committed the offense, whether or not it was defendant, committed the greater crime.
This is precisely the arbitrary decision-making the United States Supreme Court sought to avoid when it approved a trial court’s refusal to instruct down in Sparf, 156 U.S. at 63-64, 102-03, 15 S.Ct. 273. As explained by Professor Wayne LaFave, for the trial court to give such a charge under those circumstances “is inappropriately to invite the jury to exercise a degree of mercy by finding defendant guilty of a lesser crime, when the proof truly justified conviction as charged.” 6 Wayne LaFave, Criminal Procedure § 24.8(f), 503 (3d ed.2007). Similarly, the Supreme Court long has held that “it is clearly error in a court to charge the jury upon a supposed or conjectural state of facts, of which no evidence has been offered.” United States v. Breitling, 61 U.S. 252, 254, 20 How. 252, 15 L.Ed. 900 (1857); Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) (additional citation omitted). Indeed, “due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction.” Hopper v. Evans, 456 U.S. *443 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982) (emphasis original).
The jury’s province in determining guilt is not at issue here; this case involves the court’s authority to instruct, and the legislature explicitly delineated this authority when it promulgated section 556.046.2 and, later, section 556.046.8, which confíne the requirement for a trial court to instruct down to certain circumstances. That the jury has free range to find the facts does not deprive a court of its authority-and obligation-to apply the law.

C. Prior Missouri Cases Require a Basis in the Evidence to Instruct Down

The principal opinion finally justifies its result by stating it is required by prior case law. In support, it refers the reader to detailed discussion of those cases in the companion case, State v. Jackson, 433 S.W.3d 390 (Mo. banc 2014). Of course, if those prior cases erroneously interpreted section 556.046 to require instructing down regardless of the evidence, they would be incorrect for the reasons just set out. But these cases do not so require.
Williams, the primary authority relied on by Jackson, is the latest in the line of this Court’s lesser included offense instruction cases. It, like its predecessors, does not state that a lesser included offense instruction must be given whenever requested, as the majority now holds for the first time. Rather, Williams reaffirms that a party’s entitlement to a lesser included offense instruction under 556.046 is determined by whether “a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established.” 313 S.W.3d at 660 (emphasis added).
Myriad prior cases decided by this Court and the court of appeals similarly have recognized that the issue is what “a reasonable juror” can infer from the evidence, not what unreasonable inferences might be possible if the jury chose not to act rationally. Among these cases are State v. Pond, 131 S.W.3d 792, 794 (Mo. banc 2004) (holding that the defendant was entitled to a lesser included offense when discrepancies in the victim’s statements to witnesses and her testimony at trial could have led a “reasonable jury [to] find the prior statements more believable”), State v. Derenzy, 89 S.W.3d 472, 474 (Mo. banc 2002) (“If a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established, the trial court should instruct down”), State v. Beeler, 12 S.W.3d 294, 300 (Mo. banc 2000) (“[W]here the facts are such that no rational factfinder could conclude the defendant acted without deliberation, no second degree murder instruction is required”), State v. Hineman, 14 S.W.3d 924, 927 (Mo. banc 1999) (same), State v. Hibler, 5 S.W.3d 147, 148 (Mo. banc 1999) (“A reasonable jury could have believed that appellant did not attempt to kill the victim .... Therefore, there was a basis for acquitting appellant of first degree assault....”), State v. Yacub, 976 S.W.2d 452, 453 (Mo. banc 1998) (applying rational juror standard), State v. Santillan, 948 S.W.2d 574, 576 (Mo. banc 1997) (“If a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established, the trial court should instruct down”), and Mease, 842 S.W.2d at 112 (approving the trial court’s refusal to instruct down in first-degree murder case when “the only reasonable conclusion” was that the defendant deliberately murdered the victim).
In other words, each of these cases holds that an evidentiary basis for acquittal of the charged offense and conviction of the lesser offense is a predicate require *444 ment to instructing down. And the reasonable juror standard defines whether that basis is sufficiently established. To remove the reasonable juror standard from the analysis of whether a court properly refused to instruct down requires overruling Williams and each of these cases, which invokes stare decisis.
As this Court repeatedly has emphasized, “a decision of this Court should not be lightly overruled.” Eighty Hundred Clayton Corp. v. Dir. of Revenue, 111 S.W.3d 409, 411 n. 3 (Mo. banc 2003). Stare decisis “promotes stability in the law by encouraging courts to adhere to precedents.” State v. Honeycutt, 421 S.W.3d 410, 422 (Mo. banc 2013), quoting Med. Shoppe Int'l, Inc. v. Dir. of Revenue, 156 S.W.3d 333, 334-35 (Mo. banc 2005). Moreover, “stare decisis is most essential regarding prior statutory interpretations because it is there that the rule of law and respect for the separation of powers meet.” Templemire v. W & M Welding, Inc., 433 S.W.3d 371, 2014 WL 1464574 (Mo. banc 2014) (Fischer, J., dissenting).
When, as in Templemire, the prior interpretation of the statute was inconsistent with the plain meaning of the statute, the rules of construction required this Court to overrule its prior precedent, which improperly added words to the statute by judicial fíat rather than by legislative enactment. But here, the principal opinion’s departure from this Court’s previous interpretation of sections 556.046.2 and 556.046.3 without any directly supportive authority is precisely the type of action stare decisis is designed to restrain.
In sum, Williams, Pond, other cases, the Missouri statute, and constitutional principles of due process require a basis in the evidence from which a reasonable juror could acquit the defendant of the greater offense and convict him of the lesser. For these reasons and those stated in my dissenting opinion in State v. Jackson, I would hold that a juror’s right to disbelieve all or any of the evidence does not justify submitting a question to the jury that no reasonable juror could conclude was supported by the evidence.
D. Mr. Pierce Was Not Entitled to an Instruction on the Lesser Included Offense of Possession
Applying these principles here, the question is whether a reasonable juror could find that the State had failed to prove that Mr. Pierce possessed more than two grams of a substance containing cocaine but had proved that Mr. Pierce did possess some amount of such substance. If so, then it could acquit him of trafficking but convict him of the lesser included offense of possession.
Had there been no concession by counsel, so that the only issue was whether the evidence supported a lesser included offense instruction, I would hold that the trial court was obligated to instruct the jury on possession because the evidence permitted a reasonable juror to conclude that Mr. Pierce did possess a substance containing cocaine, but not more than two grams of it. That was not the situation, however, as Mr. Pierce did not dispute that the State had proved that the substance weighed more than two grams. In fact, Mr. Pierce’s attorney admitted to the jury in closing argument and conceded at the instruction conference and in his motion for new trial that the substance weighed more than two grams at the time it was seized. In the instruction conference, defense counsel argued that the jury might find that the weight was two grams or less only if it discounted the weight of the water: “[I]n light of the testimony of [sic] concerning moisture or water loss which is included in the weight of those— the weights indicated, I believe that there is a basis for possession.” The trial court *445 rejected this as a basis for instructing down. Nonetheless, in closing argument, counsel again made this concession in asking the jury to find his client not guilty, stating,
And I guess I want to wrap up with this idea of this evidence. Do we even know that it is 2.5 grams? Oh, I suspect it weighed this weight, around 2.5 grams, on the date of his arrest. I have a reason to believe that. But is all of this that was weighed that day, was that actually all a controlled substance?
He repeated this argument in his motion for new trial, admitting that substance weighed 2.51 grams at the time of the arrest and stating that the “state lab witnesses testified credibly that the vast majority of the weight loss of the controlled substance — crack—was water.” The trial court properly rejected this argument then, as it had at the instruction conference, for it was based on an erroneous understanding of the law.
His argument was not that the substance weighed two grams or less but that water caused the substance to weigh more than two grams. That is legally irrelevant. The trafficking instruction did not permit a jury to exclude consideration of the moisture content of the substance seized. It was based on MAI-CR 325.14, which in turn was based on the trafficking statute, section 195.223. The latter provides: “A person commits the crime of trafficking drugs in the second degree if ... he possesses or has under his control ... more than two grams of a mixture or substance described in subsection 2 of this section which contains cocaine base.” It does not matter if part of the weight is moisture so long as there is a detectable amount of cocaine base in the substance.[7]
As the defense did not dispute at trial the credibility or reliability of the evidence that at the time of his arrest defendant possessed more than two grams of a substance containing cocaine base, no reasonable jury could conclude based on the evidence that Mr. Pierce did not possess more than two grams of cocaine. Indeed, such uncontested facts need not even be submitted. See, e.g., State v. Hook, 433 S.W.2d 41, 48 (Mo.App.1968) (“[Wjhere there is no conflict in the evidence, the question becomes one of law for the court and not one of fact for the jury.”); cf. White v. Dir. of Revenue, 321 S.W.3d 298, 308 (Mo. banc 2010) (stating that appellate court can review uncontested facts without deference to findings below in review of license revocation). The trial court’s refusal to instruct the jury on possession, therefore, was not error.
For these reasons, I would hold the trial court properly refused to instruct down.

III. CONCLUSION

I concur with the principal opinion’s conclusion that Mr. Pierce’s retrial did not *446 violate double jeopardy, although not with its rationale, and I concur in full with the principal opinion’s holding that the evidence was sufficient to support his resisting arrest conviction.
I disagree that the trial court erred in refusing to submit the lesser included offense instruction on possession, however, and would affirm.

. All statutory references are to RSMo 2000 unless otherwise noted.

. The other cited case, Douglass v. Safire, 712 S.W.2d 373, 374 (Mo. banc 1986), states simply that a claim that a verdict is inconsistent must be brought before the jury is discharged. It is inapposite here, as the first jury long had been discharged and the second not empaneled when Mr. Pierce raised his article I, section 19 claim at the start of the second trial, when the error in his case first occurred.

. On this issue, the principal opinion cites language from the United States Supreme Court espousing the rule that a trial court is prohibited from directing a verdict against a defendant in a criminal case. We note also that in State v. Jackson, 433 S.W.3d 390, 2014 WL 2861550 (Mo. banc 2014), a companion case, the principal opinion states, without a supporting citation, that a trial court's refusal to instruct down where a party has so requested amounts to impermissibly directing a verdict against the defendant.
The United States Supreme Court rejected this argument in Sparf, 156 U.S. at 102-03, *440 105-07, 15 S.Ct. 273. Sparf recognized a trial court's authority to decide as a matter of law whether to instruct down and held that the trial court did not err in refusing a request to instruct down. Relying on Sparf at least two other states have directly rejected the argument that a court’s refusal to instruct down constitutes a directed verdict, People v. Prince, 40 Cal.4th 1179, 1269-70, 57 Cal. Rptr.3d 543, 156 P.3d 1015 (Cal.2007); Hartley v. State, 653 P.2d 1052, 1055 (Alaska App.1982).

. Accord State v. Wall, 212 Ariz. 1, 126 P.3d 148, 151 (2006); Atkinson v. State, 347 Ark. 336, 64 S.W.3d 259, 268 (2002); People v. Hughes, 27 Cal.4th 287, 366, 116 Cal.Rptr.2d 401, 39 P.3d 432 (2002); State v. Tomlin, 266 Conn. 608, 835 A.2d 12, 27 (2003); State v. Hupp, 248 Kan. 644, 809 P.2d 1207, 1212 (1991); Perry v. Commonwealth, 839 S.W.2d 268, 273 (Ky.1992); Commonwealth v. Porro, 458 Mass. 526, 939 N.E.2d 1157, 1167 (2010); People v. Cornell, 466 Mich. 335, 646 N.W.2d 127, 130 (2002); State v. Dahlin, 695 N.W.2d 588, 595-97 (Minn.2005); State v. Brent, 137 N.J. 107, 644 A.2d 583, 588 (1994); People v. Van Norstrand, 85 N.Y.2d 131, 623 N.Y.S.2d 767, 647 N.E.2d 1275, 1278 (1995); State v. Tamburano, 201 Neb. 703, 271 N.W.2d 472, 475 (1978); Rosas v. State, 122 Nev. 1258, 147 P.3d 1101, 1106-07 (2006), abrogated on other grounds by Willing v. State, 2013 WL 3297070, at *2 (Nev. May 14, 2013); State v. Keller, 695 N.W.2d 703, 711 (N.D.2005); State v. Wilkins, 64 Ohio St.2d 382, 415 N.E.2d 303, 308 (1980); State v. Burns, 6 S.W.3d 453, 464 (Tenn.1999); Bignall v. State, 887 S.W.2d 21, 24 (Tex.Crim.App.1994); State v. Fernandez-Medina, 141 Wash.2d 448, 6 P.3d 1150, 1154 (2000); State v. Sarabia, 118 Wis.2d 655, 348 N.W.2d 527, 531 (1984). Contra State v. Jeffries, 430 N.W.2d 728, 737 (Iowa 1988); State v. Wimberly, 498 So.2d 929, 932 (Fla.1986).
These cases and their holdings are discussed in more detail in the separate opinion of Stith, J., in State v. Jackson, 433 S.W.3d 390 (Mo. banc 2014), also handed down this day.

. An analogy to cases discussing a court’s review of the sufficiency of the evidence may prove helpful. A sufficiency of the evidence analysis requires a court to determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court holds that in determining the sufficiency of the evidence, "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. 2781 (emphasis added). The "rational trier of fact” standard, Jackson explains, is permissible because it "impinges upon jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law.” That is, a court’s authority when reviewing the suffi *441 ciency of the evidence to determine what fact a jury can and cannot find based on the reasonable juror standard does not impermis-sibly infringe on the jury’s ability to believe or disbelieve any or all of the evidence.

. This Court reached the same conclusion on similar circumstances in State v. Mease, 842 S.W.2d 98, 112 (Mo. banc 1992). See also State v. Lowe, 318 S.W.3d 812, 822 (Mo.App.2010).

. As the United States Supreme Court held in Chapman v. United States, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), a case involving possession of LSD on blotter paper, it was not a violation of due process or otherwise improper to consider the weight of both the LSD and the blotter paper because "[s]o long as [the mixture or substance] contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence.” Id. at 459, 111 S.Ct. 1919. Missouri courts apply the same rule. They repeatedly have held that under Missouri statute other substances mixed with the controlled substance are considered in determining the weight of controlled substance possessed by a person. Applying this rule in State v. Hill, 827 S.W.2d 196, 198 (Mo. banc 1992), this Court upheld the first degree trafficking conviction of a defendant who possessed over 500 milligrams of a "mixture or substance” containing LSD where much of the weight was due to the blotter paper that contained the LSD. Mr. Pierce wanted a lesser included offense instruction based on jury nullification of this element, not because he believed the jury might disbelieve all or part of the State’s evidence as to weight.